1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HAROLD E. CARMONY,

11            Petitioner,                    No. CIV S-07-2793-FCD-TJB

12      vs.

13   STEPHEN MAYBERG, Director,         ORDER,
     DEPARTMENT OF MENTAL            FINDINGS AND RECOMMENDATIONS
14   HEALTH, and NORMAL KRAMER,
     Executive Director, Coalinga State
15   Hospital,

16            Respondents.

17   _____/

18                            I.  INTRODUCTION

19          Petitioner Harold E. Carmony proceeds pro se with a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2005 civil recommitment as a sexually

21   violent predator (SVP) under California's Sexually Violent Predator Act (SVPA).  Cal. Welf. &

22   Inst. Code §§ 6600 et seq.  For the following reasons, (1) it is recommended that the petition

23   and other miscellaneous requests be denied; and (2) Petitioner's requests for an order to show

24   cause and judicial notice are denied.

25                      II.  FACTUAL AND PROCEDURAL HISTORY

26          The record reflects the following chronology of relevant proceedings:

                                           1

1.   On March 26, 1982, Petitioner was convicted of various sexual offenses, including multiple violations of Section 288a of the California Penal Code, a sexually violent, predatory offense within the meaning of Sections 6600(b) and 6600.1 of the California Welfare and Institutions Code. Lodged Doc. 12, at 2.[1] Petitioner's victims were four adolescent boys, aged eleven, thirteen, and fifteen. *Id.* The Sacramento County Superior Court found Petitioner was not a mentally disordered sex offender, and ultimately sentenced him to state prison for a term of thirty-four years and four months. *Id.*

2.   On May 3, 2000, the Superior Court sustained a petition to commit Petitioner to the California Department of Mental Health (DMH) as an SVP. Lodged Doc. 4, at 2.[2] The California Court of Appeal, Third Appellate District, affirmed. *Id.*; *see People v. Carmony*, 99 Cal. App. 4th 317, 328, 120 Cal. Rptr. 2d 896 (2002), *review denied*, 2002 Cal. LEXIS 5945, at *1 (Cal. Aug. 28, 2002).[3]

3.   On April 12, 2002, the first petition to recommit Petitioner from May 2002 to May 2004 was filed. Lodged Doc. 4, at 3. "A probable cause hearing was held on May 1, June 17, and June 18, 2002." *Id.*

---

[1] These facts are from the California Court of Appeal's opinion issued on June 13, 2002. *See* Lodged Doc. 12, at 2. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Moses v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).

[2] These facts are from the California Court of Appeal's opinion issued on January 4, 2007. *See supra* n.1.

[3] Petitioner challenged his 2000 civil commitment in a previous federal habeas petition filed on May 5, 2003. *Carmony v. Hunter*, No. CIV S-03-0927-DFL-JFM, 2006 WL 3762110, at *1 (E.D. Cal. Dec. 20, 2006). On December 20, 2006, it was recommended that the petition be denied. *See id.* at 16. On October 1, 2007, the district court adopted the findings and recommendations in full. *Carmony v. Hunter*, No. CIV S-03-0927-RRB-JFM, 2007 WL 2904090, at *1 (E.D. Cal. Oct. 1, 2007). On March 14, 2008, the district court denied issuing a Certificate of Appealability. *Carmony v. Hunter*, No. CIV S-03-0927-RRB-JFM, 2008 WL 744234, at *1 (E.D. Cal. Mar. 17, 2008).

4. On June 28, 2002, the Superior Court found probable cause to recommit Petitioner as an SVP. *Id.* Trial on the first recommitment petition was set for September 23, 2002. *Id.* "For reasons not reflected on the record, the trial date was continued to January 27, 2003." *Id.*

5. On January 27, 2003, by agreement of the parties, the trial date for the first recommitment petition was vacated and reset to June 26, 2003. *Id.*

6. On June 26, 2003, the trial date for the first recommitment petition was rescheduled to the following day, when the trial was set for October 28, 2003. *Id.*

7. On October 28, 2003, the trial date for the first recommitment petition was vacated and reset to March 2, 2004. *Id.*

8. On January 22, 2004, the second petition to recommit Petitioner from May 2004 to May 2006 was filed. *Id.*

9. On January 23, 2004, a probable cause hearing on the second recommitment petition was set for February 17, 2004. *Id.*

10. On February 17, 2004, the probable cause hearing on the second recommitment petition was continued to April 2, 2004, which was the next available date for defense counsel and an evaluator. *Id.*

11. On March 2, 2004, the trial date for the first recommitment petition was vacated and reset to April 2, 2004, to join with the probable cause hearing on the second recommitment petition. *Id.*

12. On April 2, 2004, a probable cause hearing for the second recommitment petition was commenced, but it was not concluded because a prosecution witness was testifying in another case. *Id.* at 3-4. "At the conclusion of testimony that day, the parties agreed to coordinate their schedules and advise the court of the next date they would be available to continue the probable cause hearing." *Id.* at 4. "Although the trial of the first recommitment petition was set for that same date, neither the parties

3

nor the court addressed it." *Id.*

13. On July 27, 2004, the probable cause hearing for the second recommitment petition resumed. *Id.* "At the conclusion of the hearing, the Superior Court determined that probable cause existed." *Id.* "In consideration of both counsels' trial and personal schedules, the trial on the second recommitment petition was set for January 4, 2005." *Id.*

14. Dated September 1, 2004, Petitioner's first habeas petition, No. 04F08151, relevant to this proceeding was filed in the Sacramento County Superior Court. *See* Lodged Docs. 15-17.  In this petition, Petitioner "challenge[d] having future mental health examinations that do not meet the Civil Discovery Act of 1986, as well as the use of prior mental health examinations in the extension proceeding in Case No. CR 61422." Lodged Docs. 16-17; *see* Lodged Doc. 15, at 3-4.1.

15. Dated September 8, 2004, Petitioner's second habeas petition, No. 04F08383, relevant to this proceeding was filed in the Sacramento County Superior Court. *See* Lodged Doc. 17.  In this petition, Petitioner challenged:  (1) "[t]he vagueness of the SVP Act which gives no guidance as to when the trial must take place;" and (2) the "delaying of trial." *Id.* at 3-4.

16. In an order dated October 12, 2004, the Superior Court denied Petititioner's first and second habeas petitions. *See* Lodged Docs. 16-17.  The Superior Court found that Petitioner raised issues "that could be addressed and raised by petitioner's counsel in Case No. CR 61422, and not by petitioner . . . ." *Id.*

17. On October 27, 2004, Petitioner filed his third habeas petition, No. 04F09535, relevant to this proceeding, in the Sacramento County Superior Court. *See* Lodged Doc. 13.  Petitioner argued that:  (1) "[t]he trial court does not have statutory authority to join SVP proceedings" in Case No. CR 61422, violating his due process rights; and (2) "[t]he court lacks jurisdiction to accept a new SVP petition."

*Id.* at 3-4.

18. In an order dated November 3, 2004, the Superior Court denied Petitioner's third habeas petition. *See* Lodged Doc. 14. The Superior Court determined, again, that Petitioner raised issues "that could be addressed and raised by petitioner's counsel in Case No. CR61422, and not by petitioner . . . ." *Id.*

19. On December 28, 2004, Petitioner filed a habeas petition in the California Court of Appeal, Third Appellate District. *See* Lodged Doc. 10. Petitioner raised eleven grounds for relief, including: (1) his "Constitutional Right to petition the courts," (2) violations of the Civil Discovery Act of 1986, "United States and California Constitutions," in that Petitioner was not afforded protections "when seeking a mental evaluation;" (3) failure to receive proper notice so he "could object to the mental examination or to limit its scope," violating his due process rights; (4) use of "old information[] to make a current diagnosis, violating his due process rights "to a fair and impartial hearing;" (5) "vagueness of the [SVPA];" (6) failure to "balanc[e] . . . process due;" (7) "[d]elaying of trial;" (8) joining an SVP proceeding "with another civil commitment," thereby violating due process; (9) violations of due process and equal protection because "all . . . long term commitments in California have a clear time frame within which the trial must take place EXCEPT for the SVPA;" (10) joinders "are not acceptable remedies for late trials;" and (11) lack of jurisdiction "to accept a new petition for recommitment." *Id.* at iii-xiii.

20. On January 4, 2005, the trial on the second recommitment petition was continued for two days because the prosecutor was ill. Lodged Doc. 4, at 4.

21. On January 6, 2005, the trial on the second recommitment petition was continued to January 10, 2005. *Id.* Also on January 6, 2005, the California Court of Appeal, Third Appellate District, summarily denied Petitioner's appeal for habeas relief. *See* Lodged Doc. 11.

22. On January 10, 2005, the Superior Court granted the State's motion to consolidate the trials on the two recommitment petitions and denied Petitioner's motion for separate trials.  Lodged Doc. 4, at 4.  The Superior Court acknowledged Petitioner's claim that he "has been objecting to continuances," but stated that it "has reviewed the court's files over the matter and finds in the files no specific objection by [Petitioner] to the continuances on the specific grounds of unreasonable delay or denial of speedy resolution."  *Id.* (internal quotation marks omitted).  The Superior Court distinguished this case from *Litmon v. Superior Court*, 123 Cal. App. 4th 1156, 1176-77, 21 Cal. Rptr. 3d 21 (2004), in which the SVP specifically objected to the delay, and in which a further delay was granted solely to accommodate consolidation.  Lodged Doc. 4, at 4.

23. "In January 2005, a jury found true the allegation that, by reason of a diagnosed mental disorder, Petitioner is an SVP who is a danger to the health and safety of others because he is likely to engage in sexually violent predatory criminal behavior if released."  *Id.* at 1.  "Based on the jury finding, Petitioner's commitment to the DMH was extended to May 2006."  *Id.* at 1-2.

24. On October 5, 2005, Petitioner filed a habeas petition in the California Supreme Court.  *See* Lodged Docs. 8A-8D.  Petitioner raised the same eleven grounds for relief as raised in the Court of Appeal.  *See* Lodged Doc. 8A, at iii-xiii.

25. On November 8, 2005, Petitioner directly appealed his recommitment to the California Court of Appeal, Third Appellate District.  *See* Lodged Doc. 1.  Petitioner alleged that:  (1) "the consolidation of two recommitment petitions, after the previous commitment under the Sexually Violent Predator Act had expired, violated [Petitioner's] due process rights;" and (2) there was insufficient evidence to support the jury verdict that he was likely to reoffend.  *Id.* at ii.

26. On June 7, 2006, Respondents filed a response to Petitioner's appeal on his

recommitment, *see* Lodged Doc. 2, and Petitioner filed a reply on August 1, 2006. *See* Lodged Doc. 3.

27. On December 14, 2005, the California Supreme Court denied the habeas petition without a written opinion, only citing *In re Robbins*, 18 Cal. 4th 770, 780, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998), *In re Clark*, 5 Cal. 4th 750, 21 Cal. Rptr. 2d 509, 855 P.2d 729 (1993), and *In re Dixon*, 41 Cal. 2d 756, 264 P.2d 513 (1953).  Lodged Doc. 9.

28. On January 4, 2007, the Court of Appeal issued a reasoned opinion affirming the recommitment.  *See* Lodged Doc. 4.

29. In his petition for review dated February 14, 2007, Petitioner directly appealed his recommitment in the California Supreme Court.  *See* Lodged Doc. 5.  Petitioner also filed an Application and Declaration of Counsel in Support of Relief from Default, dated February 14, 2007.  *See* Lodged Doc. 6.  In his application, Petitioner asked the Supreme Court "to grant relief from default from the failure to timely file his Petition for Review."  *Id.* at 1.  Petitioner acknowledged that any petition for review was "due for filing between February 3 and 13, 2007," and "it was counsel's inadvertence that he failed to calendar the due dates on his office calendar."  *Id.* at 2.

30. In a letter dated February 15, 2007, the California Supreme Court denied Petitioner's application for relief from default and directed that the petition for review be returned to Petitioner.  *See* Lodged Doc. 7.

31. On December 27, 2007, Petitioner filed the instant federal habeas petition.

32. Respondents filed an answer to the petition on June 6, 2008, to which Petitioner filed a traverse on June 26, 2008.

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28

U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one state court has adjudicated a petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (finding presumption that later unexplained orders, upholding judgment or rejecting same claim, rests upon same ground as prior order)). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-13 (9th Cir. 2003). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). When no state court reached the merits of a claim, the federal court must review that claim de novo. *See Chaker v.*

1  *Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006) (applying de

2  novo standard of review to claim in habeas petition that was not adjudicated on merits by state

3  court); *Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (same); *Pirtle v. Morgan*, 313 F.3d

4  1160, 1167 (9th Cir. 2002) ("[W]hen it is clear that a state court has not reached the merits of a

5  properly raised issue, we must review it de novo.").

IV.  CLAIMS FOR REVIEW

7       Petitioner raises:  (1) seven grounds for relief; (2) a request for an order to show cause;

8  (3) a request for judicial notice; and (4) other miscellaneous requests.  Petitioner's seven grounds

9  for relief include the following:

10    1.  "California denies indigent pro se litigants with appointed trial counsel the

11        constitutional right to redress their grievances through habeas corpus until after all trial

12        and appeal proceedings are completed."  Pet'r's Supplemental Pet. 3, ECF No. 2

13        (emphasis omitted).

14    2.  "The [s]tate evaluators and the D.A. ignored the ground rules set up by the Civil

15        Discovery Act (CDA), [Code of Civil Procedure §§ 2016 through 2036] as well as the

16        SVPA," thereby denying "Petitioner his right to due process under both the United

17        States and California Constitutions."  Pet'r's Pet. 5, ECF No. 1.

18    3.  "The vagueness of the California SVPA statute does not delineate when a trial must

19        take place."  Pet'r's Supplemental Pet. 3 (emphasis omitted).

20    4.  "The lengthy delays California permits in bringing Petitioner to trial for a civil

21        commitment determination violates Petitioner's constitutional due process of law

22        rights under both the United States and California Constitutions."  *Id.*

23    5.  "SVPA Civil Commitment Hearing[s] . . . may not be joined with another civil

24        commitment," violating Petitioner's due process rights.  *Id.*

25    6.  "The court lacked jurisdiction to accept a new petition for recommitment" because

26        "[b]y the time the second petition for recommitment was filed[,] this Petitioner's

9

original commitment had expired and he was being held by a petition to recommit . . .

.” Pet'r's Pet. 7.

7. “[T]here was insufficient evidence of a current mental disorder to support a finding

that Petitioner was a current danger and likely to commit a predatory violent criminal

offense if released.” Pet'r's Supplemental Pet. 4.

A.  Procedural Default

Respondents contend that Petitioner procedurally defaulted all seven grounds raised in the

instant habeas petition. *See* Resp'ts' Answer 8, ECF No. 15. Respondents maintain that

“[e]xhaustion and procedural default must be addressed as a preliminary matter.” *Id.* at 13.

Respondents allege “there remains no available state remedy and Petitioner's claims have thereby

satisfied the exhaustion requirement.” *Id.* at 14. However, Respondents argue that the following

procedural defaults bar Petitioner's claims:

1. Untimeliness applies to claims six and seven.[4] *Id.* (“Claims six and seven . . . were

---

[4] The record reveals that Petitioner's seven grounds for relief were raised at the following levels:

1. Ground one (right to petition) was raised in Petitioner's habeas petitions to the Superior Court, California Court of Appeal, and California Supreme Court. *See* Lodged Doc. 8A, at iii (California Supreme Court habeas petition); Lodged Doc. 10, at iii (Court of Appeal habeas petition); Lodged Doc. 13, at 20 (asking Superior Court, in third habeas petition, to “issue a writ of habeas corpus); Lodged Doc. 15, at 12 (same request in first Superior Court habeas petition); Lodged Doc. 17, at 17 (same request in second Superior Court habeas petition); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (requiring district courts to liberally construe pro se petition).

2. Ground two (Civil Discovery Act and SVPA violations) was raised in Petitioner's habeas petitions to the Superior Court, California Court of Appeal, and California Supreme Court. *See* Lodged Doc. 8A, at iv (California Supreme Court habeas petition); Lodged Doc. 10, at iv (Court of Appeal habeas petition); Lodged Doc. 15, at 3-4.1, (1)-(4), 1.-11. (raising in first Superior Court habeas petition, *inter alia*, “[v]iolations of [s]tatutory [l]aw (Civil Discovery Act of 1986)” and “statutory violations in the evaluation process”); *see also Haines*, 404 U.S. at 520.

3. Ground three (vagueness) was raised in Petitioner's habeas petitions to the Superior Court, California Court of Appeal, and California Supreme Court. *See* Lodged Doc. 8A, at vii (California Supreme Court habeas petition); Lodged Doc. 10, at vii (Court of

---

raised on direct review, but . . . were presented to the California Supreme Court in an untimely petition.").

2. Waiver under *In re Dixon*, 41 Cal. 2d 756, 264 P.2d 513 (1953), applies to claims one through five.[5]  Resp'ts' Answer 14 ("Claims one through five . . . were not presented on direct review . . . ."); *see Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000) ("In California, a convicted defendant desiring to bring claims in a state habeas

Appeal habeas petition); Lodged Doc. 17, at 3 (second Superior Court habeas petition).

4. Ground four (trial delay) was raised in Petitioner's habeas petitions to the Superior Court, California Court of Appeal, and California Supreme Court. *See* Lodged Doc. 8A, at ix (California Supreme Court habeas petition); Lodged Doc. 10, at ix (Court of Appeal habeas petition); Lodged Doc. 17, at 4 (second Superior Court habeas petition).

5. Ground five (trial consolidation) was raised in Petitioner's habeas petitions to the Superior Court, California Court of Appeal and California Supreme Court. *See* Lodged Doc. 8A, at x, xii (California Supreme Court habeas petition); Lodged Doc. 10, at x, xii (Court of Appeal habeas petition); Lodged Doc. 13, at 3 (third Superior Court habeas petition).  Ground five was also raised on direct appeal to the Court of Appeal and California Supreme Court. *See* Lodged Doc. 1, at ii (Court of Appeal direct appeal); Lodged Doc. 5, at i (California Supreme Court direct appeal).

6. Ground six (jurisdiction) was raised in Petitioner's habeas petitions to the Superior Court, California Court of Appeal, and California Supreme Court. *See* Lodged Doc. 8A, at xiii (California Supreme Court habeas petition); Lodged Doc. 10, at xiii (Court of Appeal habeas petition); Lodged Doc. 13, at 4 (third Superior Court habeas petition).  Arguably, ground six was also raised on direct appeal to the Court of Appeal, *see* Lodged Doc. 1, at 25-26 (asserting, in Petitioner's opening brief to California Court of Appeal, that "[t]he delay and resulting lack of a valid commitment to extend could not be remedied by the filing of a subsequent petition to recommit"), but not on direct appeal to the California Supreme Court. *See* Lodged Doc. 5, at 22-27 (California Supreme Court direct appeal).

7. Ground seven (insufficient evidence) was raised on direct appeal to the California Court of Appeal and California Supreme Court. *See* Lodged Doc. 1, at ii (Court of Appeal direct appeal); Lodged Doc. 5, at ii (California Supreme Court direct appeal).

Thus, claims five and seven, and not claims six and seven as Respondents assert, were the grounds that Petitioner attempted to raise on direct review. *See supra* n.4.  Respondents, therefore, probably mean that claims five and seven, and not claims six and seven, are procedurally barred by untimeliness. *See supra* n.4.

[5] Claims one, two, three, four, and six were not presented on direct review. *See supra* n.4.  Thus, Respondents probably mean that these claims are procedurally barred by waiver under *In re Dixon*, 41 Cal. 2d 756, 264 P.2d 513 (1953). *See supra* n.4.

1    petition, must, if possible, have pursued the claims on direct appeal from his

2    conviction. . . . This requirement is called the *Dixon* rule.).

3    3.  The successive petition rule applies to claims one through five.[6]  Resp'ts' Answer 14

4        ("Claims one through five . . . were presented in a piecemeal fashion via several state

5        habeas petitions . . . ."); *see In re Clark*, 5 Cal. 4th at 769, 21 Cal. Rptr. 2d 509, 855

6        P.2d 729 ("It is the policy of this court to deny an application for habeas corpus which

7        is based upon grounds urged in a prior petition which has been denied, where there is

8        shown no change in the facts or the law substantially affecting the rights of the

9        petitioner.").

10   Federal courts "will not review a question of federal law decided by a state court if the

11   decision of that court rests on a state law ground that is independent of the federal question and

12   adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *see Harris*

13   *v. Reed*, 489 U.S. 255, 260-62 (1989).  "For a state procedural rule to be 'independent,' the state

14   law basis for the decision must not be interwoven with federal law." *LaCrosse v. Kernan*, 244

15   F.3d 702, 704 (9th Cir. 2001) (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  For a

16   state procedural rule to be "adequate," it must be "clear, consistently applied, and

17   well-established." *Calderon v. U.S. District Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996),

18   *cert. denied*, 520 U.S. 1204 (1997).  Even if there is an independent and adequate state ground

19   for the decision, the federal court may still consider the claim if the petitioner can demonstrate:

20   (1) cause for the default and actual prejudice resulting from the alleged violation of federal law;

21   or (2) a fundamental miscarriage of justice.  *See Harris*, 489 U.S. at 262 (citing *Murray v.*

22   *Carrier*, 477 U.S. 478, 485, 495 (1986)).

23   Although a procedural bar issue in a habeas corpus proceeding ordinarily should be

24

25       [6] Claims one through six were raised in the Superior Court through multiple habeas
     petitions.  *See supra* n.4.  Thus, Respondents probably mean that claims one through six are
26   procedurally barred by the successive petition rule.  *See supra* n.4.

considered first, it is grounded in concerns of comity and federalism and is not jurisdictional. *See Coleman*, 501 U.S. at 730; *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997). Thus, the procedural default issue may be bypassed in the interest of judicial economy whenever the merits are clear but the procedural default issues are not. *See Lambrix*, 520 U.S. at 525 ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first [given constraints of judicial economy]; only that it ordinarily should be."); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the [habeas petition], so it may well make sense in some instances to proceed to the merits if the result will be the same."); *see generally Petrocelli v. Angelone*, 248 F.3d 877, 886 (9th Cir. 2001) ("Ninth Circuit case law on [procedural default] is complex."). For that reason, it is assumed that Petitioner's claims are not defaulted, and the merits of Petitioner's claim will be addressed.

B.  Merits of Petitioner's Claims

Some of Petitioner's seven grounds for relief overlap.  To the extent possible, the grounds resolved by binding authority are grouped together.  Some grounds are referenced more than once as they refer to separate issues.  The remaining grounds are reviewed in seriatim.  Accordingly, Petitioner's grounds are addressed as follows:

1. Grounds One, Three, and Four:  Trial Delay;

2. Ground One:  Counsel's Failure to Make Objections;

3. Ground One:  Violation of the Right to Petition for State Habeas Relief;

4. Ground Two:  Violations of the California Civil Discovery Act and SVPA;

5. Ground Three:  Vagueness;

6. Ground Five:  Trial Consolidation;

7. Ground Six:  Jurisdiction; and

8. Ground Seven:  Insufficient Evidence.

For the following reasons, Petitioner's grounds for relief are without merit.

13

1    1.  Grounds One, Three, and Four:  Trial Delay

2    In grounds one, three, and four, Petitioner's claims are understood as allegations that his

3    trial delay violated his rights to (1) due process; (2) equal protection; and (3) a speedy trial.

4    a.  Due Process Claim

5    In ground one, Petitioner alleges he was denied "his constitutional right to due process

6    and access to the courts in a meaningful time and in a meaningful manner."  Pet'r's Mem. 15,

7    ECF No. 3.  In ground three, Petitioner claims he was denied his due process rights because "the

8    SVPA has no statutory time for when the (re)commitment trial must take place."  *Id.* at 36.  In

9    ground four, Petitioner argues that "the delay in bringing petitioner to trial violated his

10    constitutional right to due process of law."  Pet'r's Pet. 6.

11    i.  Legal Standard for Due Process Claim

12    The California Supreme Court in *People v. Superior Court* (*Ghilotti*), 27 Cal. 4th 888,

13    902-05, 119 Cal. Rptr. 2d 1, 44 P.3d 949 (2002), presents a detailed overview of the SVPA.

14    CAL. WELF. & INST. CODE §§ 6600 *et seq.*  That legislation, effective January 1, 1996, "provides

15    for the involuntary civil commitment of certain offenders, following completion of their prison

16    terms, who are found to be SVP's because they have previously been convicted of sexually

17    violent crimes and currently suffer diagnosed mental disorders which make them dangerous in

18    that they are likely to engage in sexually violent criminal behavior."  *Ghilotti*, 27 Cal. 4th at 902,

19    119 Cal. Rptr. 2d 1, 44 P.3d 949; *see* CAL. WELF. & INST. CODE § 6600(a)(1).

20    The SVPA codifies a process involving several administrative and judicial stages to

21    determine whether a convicted sex offender meets the requirements for civil commitment.

22    Generally, the Department of Corrections screens sex offender inmates at least six months before

23    their scheduled release dates.  CAL. WELF. & INST. CODE § 6601(a)(1).  "If officials find the

24    inmate is likely to be an SVP, he is referred to the Department . . . for a 'full evaluation' as to

25    whether he meets the criteria in section 6600."  *Ghilotti*, 27 Cal. 4th at 903, 119 Cal. Rptr. 2d 1,

26    44 P.3d 949 (quoting *Hubbart v. Superior Court*, 19 Cal. 4th 1138, 1145, 81 Cal. Rptr. 2d 492,

14

969 P.2d 584 (1999)).  Using appropriate assessment protocols, if at least two practicing

psychiatrists or psychologists designated by the Director of Mental Heath concur "that the person

has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence

without appropriate treatment and custody, the Director shall forward a request for a

[commitment] petition . . . to the county" where the offender was convicted of the predatory sex

crime.  CAL. WELF. & INST. CODE § 6601(b)-(d).  If the county's legal counsel agrees with the

request, a petition for commitment is filed in the Superior Court  *Id.* § 6601(h)-(i).

"The filing of the petition triggers a new round of proceedings" under the SVPA.

*Ghilotti*, 27 Cal. 4th at 904, 119 Cal. Rptr. 2d 1, 44 P.3d 949 (citation and internal quotation

marks omitted).  First, the superior court holds a hearing, at which the alleged predator is entitled

to assistance of counsel, to determine whether there is probable cause to believe that the

individual is likely to engage in sexually violent, predatory criminal behavior after release.  CAL.

WELF. & INST. CODE § 6602(a).  If the superior court determines that probable cause exists, the

court must order the individual to remain in custody pending a civil commitment trial.  *Id.*; *see*

*Carty v. Nelson*, 426 F.3d 1064, 1066-67 (9th Cir.), *amended*, 431 F.3d 1185, 1186 (9th Cir.

2005) (changing "the San Diego County District Attorney contends" to "the State contends"

(internal quotation marks omitted)), *cert. denied*, 547 U.S. 1130 (2006).

At trial, the individual is entitled to "the assistance of counsel, to the right to retain

experts or professional persons to perform an examination on his or her behalf, and to have

access to all relevant medical and psychological records and reports."  CAL. WELF. & INST. CODE

§ 6603(a).  Either party may demand and receive trial by jury.  *Id.* § 6603(a)-(b).  The trier of fact

"shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator."

*Id.* § 6604.

"[W]here the requisite SVP findings are made, 'the person shall be committed for two

years to the custody of the . . . Department . . . for appropriate treatment and confinement in a

secure facility . . . .'"  *Ghilotti*, 27 Cal. 4th at 904, 119 Cal. Rptr. 2d 1, 44 P.3d 949 (citing CAL.

1   WELF. & INST. CODE § 6604).[7]   Under the pre-2006 statutory revisions pertinent here and

2   described in *Ghilotti*, any recommitment term "shall also be for two years."  *Id.* at 905, 119 Cal.

3   Rptr. 2d 1, 44 P.3d 949 (citing CAL. WELF. & INST. CODE § 6604.1(a)).[8]   The recommitment term

4   "shall commence on the day the previous term expires," after implementing the same codified

5   procedural safeguards accompanying the initial civil commitment proceedings.  *Id.*

6          Rejecting due process challenges to the SVPA, the Ninth Circuit held that California's

7   SVPA is similar to the Kansas civil commitment statute upheld in *Kansas v. Hendricks*, 521 U.S.

8   346 (1997).  *See Hubbart v. Knapp*, 379 F.3d 773, 781 (9th Cir. 2004).  In *Hendricks*, the

9   Supreme Court held that state civil commitment schemes must follow "proper procedures and

10  evidentiary standards" and require proof of dangerousness to one's self or to others, coupled with

11  proof of some additional factor such as a "mental illness" or "mental abnormality."  521 U.S.

12  346, 357-58 (1997).  Procedural safeguards under the SVPA "include requirements that accused

13  sexually violent predators receive diagnoses from two psychiatrists or psychologists, assistance

14  of counsel, and trial by jury on proof beyond a reasonable doubt." *Hubbart*, 379 F.3d at 781.  The

15  Supreme Court rejected "that the State's use of procedural safeguards traditionally found in

16  criminal trials makes the proceedings here criminal rather than civil." *Hendricks*, 521 U.S. at

17  364.

18                              ii.  Analysis of Due Process Claim

19          Here, the record does not show that Petitioner was denied any of these procedural

20  protections.  Petitioner was also accorded all procedural protections identified in *Vitek v. Jones*,

21  445 U.S. 480, 494-97 (1980), i.e., (1) written notice; (2) a hearing at which evidence is disclosed;

22

23          [7] The SVPA was revised in 2006, modifying the predicate offense requirement so that a
    person only needs a conviction of a sexually violent offense against one or more victims, rather
24  than two or more victims as previously defined.  *See* CAL. WELF. & INST. CODE § 6600(a)(1).
    The 2006 revisions also provided for an indeterminate term of commitment upon an SVP finding
25  rather than renewable two-year terms.  *Id.* § 6604.

26          [8] *See supra* n.7.

                                              16

1   (3) an opportunity to be heard; (4) an independent decision-maker; (5) reasoned findings; (6)

2   access to counsel; and (7) effective and timely notice of these rights.  *See Carty*, 426 F.3d at

3   1074.  As Respondents point out, there is no clearly established Supreme Court precedent

4   requiring that a trial occur within any set time period.  Additionally, in the findings and

5   recommendations for Petitioner's previous federal habeas petition, it was found that "California's

6   SVPA provides no requirement for when the commitment trial must commence."  *Carmony v.*

7   *Hunter*, No. CIV S-03-0927-DFL-JFM, 2006 WL 3762110, at *13 (E.D. Cal. Dec. 20, 2006).

8   Thus, Petitioner's due process claim fails.

9                                b.  Equal Protection Claim

10          In ground three, Petitioner argues that he was denied "equal protection" because "the

11   SVPA has no statutory time for when the (re)commitment trial must take place."  Pet'r's Mem.

12   35-36.  Equal protection claims arise when a charge is made that similarly situated individuals

13   are treated differently without a rational relationship to a legitimate state purpose.  *See San*

14   *Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40 (1973).  Because the SVPA's lack of time frame

15   for a trial on a commitment application applies to everyone subject to the statute, Petitioner was

16   not treated differently than anyone who is similarly situated (i.e., subject to the SVPA).

17   Accordingly, Petitioner's equal protection claim fails.

18                                c.  Speedy Trial Claim

19          In ground one, Petitioner asserts that "California effectively denied Petitioner his

20   constitutional right of habeas corpus . . . more than two years after the issues arose, not the

21   speedy remedy intended."  *See* Pet'r's Pet. 5.  In ground three, Petitioner maintains that the

22   Superior Court never inquired if Petitioner "was okay with the lengthy delays," and Petitioner

23   "objected to the delays at every opportunity."  *Id.* at 6.

24          The speedy trial argument fails because no Supreme Court authority establishes the right

25   to a speedy trial in civil commitment proceedings.  *See Allen v. Illinois*, 478 U.S. 364, 371-72

26   (1986) (holding full panoply of rights afforded criminal defendants under Constitution are not

1  applicable to civil commitment proceedings); *see also United States v. Perry*, 788 F.2d 100, 118

2  (3d Cir. 1986) ("The speedy trial clause deals with the timeliness of criminal prosecutions, not

3  civil commitment proceedings."); *see generally United States v. Budell*, 187 F.3d 1137, 1141

4  (9th Cir. 1999) (noting because commitment hearing is civil matter, constitutional rights to which

5  defendant in criminal trial is entitled do not adhere to commitment hearing); *but see Atwood v.*

6  *Vilsack*, 338 F. Supp. 2d 985, 994 (S.D. Iowa 2004) (applying Sixth Amendment speedy trial

7  right to analyze denial of speedy justice claim by pretrial detainees awaiting civil commitment

8  hearings pursuant to Iowa's Sexually Violent Predator Act).  However, even if the right to a

9  speedy trial attached to civil commitment proceedings, Petitioner cannot demonstrate that he was

10 deprived of a speedy trial.  *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

11                          i.  Legal Standard for Speedy Trial Claim

12         A speedy trial is a fundamental right for the accused, guaranteed by the Sixth Amendment

13 and imposed by the Due Process Clause of the Fourteenth Amendment on the states.  *Klopfer v.*

14 *North Carolina*, 386 U.S. 213, 223 (1967).  The Supreme Court has not devised a per se rule to

15 determine whether the right to a speedy trial is violated.  Instead, courts must apply a flexible

16 functional analysis, and consider and weigh the following factors in evaluating a speedy trial

17 claim: (1) length of the delay; (2) reason for the delay; (3) the petitioner's assertion of his right;

18 and (4) prejudice to the petitioner.  *Doggett*, 505 U.S. at 651; *Barker v. Wingo*, 407 U.S. 514, 530

19 (1972).  None of the four factors are either a necessary or sufficient condition for finding a

20 speedy trial deprivation.  *Barker*, 407 U.S. at 533.  They are related factors and must be

21 considered together with other relevant circumstances.  *Id.*  "[T]hese factors have no talismanic

22 qualities; courts must still engage in a difficult and sensitive balancing process."  *Id.*

23                          ii.  First Factor:  Length of the Delay

24         The first factor of the *Barker* test, i.e., length of the delay, is actually a dual inquiry.  First,

25 as a threshold matter, inquiry into the remaining *Barker* factors is only necessary if the delay is

26 "presumptively prejudicial."  *Id.* at 530.  Second, "if the accused makes this showing, the court

must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652.

In examining the first prong of the delay factor, the Ninth Circuit held that presumptive prejudice is not dispositive; instead, it is simply part of the mix of relevant facts and its importance increases with the length of the delay. *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003). Depending on the nature of the charges, lower courts generally found post-accusation delay presumptively prejudicial as it approaches one year. *Doggett*, 505 U.S. at 652 n.1; *see McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003) (finding three year delay was presumptively prejudicial); *Gregory*, 322 F.3d at 1162 (determining twenty-two month delay between first superseding indictment and trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long).

Here, the first *Barker* factor weighs in favor of Petitioner's right to a speedy trial. The State first petitioned to have Petitioner recommitted on April 12, 2002. *See* Lodged Doc. 4, at 3. On January 22, 2004, the State filed a second recommitment petition, before trial on the first recommitment petition occurred. *Id.* Trial on the first recommitment petition did not commence until January 10, 2005, when the Superior Court granted the State's motion to consolidate trials on the two recommitment petitions and denied Petitioner's motion for separate trials. *See id.* at 4. Thus, Petitioner's trial on the first recommitment petition did not begin until almost thirty-three months after the first petition was filed. Accordingly, this factor weighs in favor of Petitioner, and the second, third, and fourth *Barker* factors must be reviewed.

iii. Second Factor: Reason for the Delay

The reason for the delay is the second prong in the *Barker* analysis. *Barker*, 407 U.S. at 530. Specifically, the second *Barker* factor asks which party is responsible for the delay. Courts generally look to the reasons for the delay in commencing the trial to determine whether those reasons are deliberate, neutral, or valid. *Id.* at 531 (focusing evaluation of delay on "the reason

1  the government assigns to justify the delay"); *United States v. Henry*, 615 F.2d 1223, 1233 (9th

2  Cir. 1980).

3        In assessing the government's explanation, different weights should be assigned to

4  different reasons.  Intentional delays which obtain a strategic advantage for the prosecution are

5  weighed heavily against the government.  *Barker*, 407 U.S. at 531.  A more neutral reason such

6  as negligence or overcrowded courts should be weighed less heavily, but nevertheless should be

7  considered because the ultimate responsibility for such circumstances rests with the government

8  rather than with the petitioner.  *Id.*  A valid reason, such as a missing witness, serves to justify

9  appropriate delay.  *Id.*  Delay attributable to the petitioner's own acts or to tactical decisions by

10 petitioner's counsel will not bolster a petitioner's speedy trial argument.  *See McNeely*, 336 F.3d

11 at 827.

12        Here, Respondents contend that "Petitioner must be deemed to have consented to or

13 waived the right to object to the delay in the proceedings on the two petitions."  Resp'ts' Answer

14 21.  Respondents attribute the majority of delays to "Petitioner's counsel's involvement in other

15 trials."  *Id.*  Respondents assert that "[w]itness unavailability worked to delay the proceeding on

16 each side one time, and the District Attorney was ill on one occasion."  *Id.*  But, according to

17 Respondents, Petitioner never objected to these delays.  *Id.*

18        The record supports Respondents' argument that Petitioner never objected to these delays

19 in the proceedings on the two petitions.  After the Superior Court found probable cause to believe

20 that Petitioner was an SVP on June 28, 2002, the case was continued from time to time, until

21 January 10, 2005.  The record reveals the following:

22    1.  On June 28, 2002, both parties agreed to set the trial date on September 23, 2002.

23        Rep.'s Augment on Appeal vol. 1, 11.  The record does not indicate why the first trial

24        date of September 23, 2002 was continued to January 27, 2003.  Supplemental

25        Clerk's Tr. vol. 1, 2.

26    2.  On January 27, 2003, Petitioner stated that the trial date was "going to be reset," and

"[w]e already picked a date," i.e., June 26, 2003.  Rep.'s Augment on Appeal vol. 1, 14.  Petitioner explained, "[T]hat's the first date that the evaluator is going to be available."  *Id.*  In their answer, Respondents point out, "Presumably this was Petitioner's evaluator, but the record is not specific.  Petitioner made no objection to the continuance and the court's focus on Petitioner suggests that he was the party requesting the continuance."  Resp'ts' Answer 14.

3.  On March 21, 2003, the parties appeared so the Superior Court could address Petitioner's "motion to compel production of certain documents," which the Superior Court granted.  Rep.'s Augment on Appeal vol. 1, 16-17.  Petitioner confirmed the June 26, 2003 trial date, and made no objection.  *Id.* at 19 ("It's currently set for trial in June, Your Honor, the 27th [sic].").

4.  On June 26, 2003, neither party appeared for trial.  *Id.* at 19a. ("We called and they said they totally forgot about it.  And we put it over to [June 27, 2003].").  "Council [sic] for [Petitioner] was in trial on the case of Armel Hunt, 91F08195."  Clerk's Tr. on Appeal vol. 1, 19.  The matter was rescheduled for June 27, 2003.  *See* Lodged Doc. 4, at 3.  The record reveals no objection by Petitioner.

5.  On June 27, 2003, again, neither party appeared for trial.  Rep.'s Augment on Appeal vol. 1, 19a ("They did this yesterday, too.  Nobody showed.").  The Deputy District Attorney "call[ed] back" and requested an October 28, 2003 trial date.  *Id.* at 19a-19b.  The record does not show that Petitioner objected.

6.  On July 30, 2003, Petitioner's counsel "went to trial as DNA council [sic] in the [c]ase of People vs. Cross, Superior Court No. 02F06519.  That trial was completed in September of 2003, and yet on October 28, 2003, another continuance was granted in this matter."  Clerk's Tr. on Appeal vol. 1, 20.

7.  On October 28, 2003, the trial date was continued to March 2, 2004.  Rep.'s Augment on Appeal vol. 1, 20; *see* Clerk's Tr. on Appeal vol. 1, 20.  The record does not show

21

any objections by Petitioner.

8.  In November 2003, Petitioner's counsel "was in a homicide trial, People vs. Tinker, Superior Court No. 99F07982." Clerk's Tr. on Appeal vol. 1, 20.

9.  On January 23, 2004, the parties appeared "for receipt of records." Rep.'s Augment on Appeal vol. 1, 22. The State filed a second recommitment petition," and the parties "agreed to set a PC hearing for the second petition" on February 17, 2004. *Id.* Petitioner's counsel stated he was "in no way conceding that the People have any right to file this subsequent petition, nor to attempt to consolidate these petitions at any point in time." *Id.* at 23. The Superior Court replied, "I imagine that you can file the papers to contest it before that date." *Id.* Petitioner's counsel responded, "I don't think we need to necessarily do that because there's been no move to consolidate at this point in time." *Id.* Petitioner's counsel added, "[F]or the record, my client is specifically waiving his appearance for any proceeding, short of trial." *Id.* The record, therefore, does not show that Petitioner objected to any delay.

10. On February 17, 2004, the probable cause hearing on the second recommitment petition was continued to April 2, 2004. *Id.* at 25. Petitioner's counsel stated, "I believe the next date that both myself and the evaluator are going to be available are April 2nd." *Id.* Nowhere does Petitioner object to any delay.

11. On March 2, 2004, the trial date for the first recommitment petition was reset to April 2, 2004, to join the probable cause hearing on the second recommitment petition. *Id.* at 26. Petitioner's counsel explained, "I'm in trial," and "I'll probably still be in trial on April 2, 2004.[9] *Id.* Petitioner "was not personally present." *Id.* Petitioner, therefore, did not object to any delays.

---

[9] "From approximately February 3, 2004 until April 14, 2004," Petitioner's counsel "was in trial as DNA council [sic] on the case of People vs. Rufus Kelsaw, Superior Court No. 02F06630." Clerk's Tr. on Appeal vol. 1, 20.

12. On April 2, 2004, the probable cause hearing for the second recommitment petition commenced. *Id.* at 27. Neither party, however, mentioned that the trial on the first recommitment petition should have commenced as well. *See* Lodged Doc. 4, at 4. Moreover, Petitioner was not personally present at the hearing. Clerk's Tr. on Appeal vol. 1, 27 ("His appearance is excused" because "he specifically asked to remain at Atascadero State Hospital during the pendency of the probable cause hearing."). Thus, Petitioner did not object to any delays.

13. On July 27, 2004, the probable cause hearing on the second recommitment petition resumed. *Id.* at 117. The Superior Court determined that probable cause existed, and asked if the parties agreed on a trial date for the second recommitment petition. *Id.* at 185-86. The parties chose January 4, 2005, because of "trials we have already set," the Deputy District Attorney mentioned. *Id.* at 186. Petitioner's counsel added, "And [the Deputy District Attorney's] vacation, my vacation, his baby." *Id.* There was no discussion of the trial on the first recommitment petition during these proceedings. Also, "Def's appearance [was] waived." Supplemental Clerk's Tr. vol. 1, 10. The record, therefore, does not reveal any objections by Petitioner regarding delay.

14. On January 4, 2005, the trial on the second recommitment petition was continued to January 6, 2005, because "DA [was] ill." *Id.* at 11. The record does not reflect that Petitioner objected to any delays.

15. On January 6, 2005, trial on the second recommitment petition was reset to January 10, 2005. *See* Lodged Doc. 4, at 4. The record does not show that Petitioner objected to any delays.

16. Finally, on January 10, 2005, the parties raised the subject of trial on the first petition when they filed simultaneous motions. Clerk's Tr. on Appeal vol. 1, 15-21.

The record also shows that during the thirty-three month period when Petitioner's case was continued without objection, Petitioner was busy challenging the legality of the SVPA

1    proceedings against him by filing numerous pro se petitions in the state courts.  Petitioner did

2    assert that his right to a speedy trial was violated in his habeas petitions to the Superior Court,

3    California Court of Appeal, and California Supreme Court petitions.  *See supra* n.4.  The

4    Superior Court determined Petitioner raised issues "that could be addressed and raised by

5    petitioner's counsel in Case No. CR 61422, and not by petitioner . . . ."  *See* Lodged Docs. 16-17.

6    The Court of Appeal and California Supreme Court denied the petitions without written

7    opinions.  *See* Lodged Docs. 9, 11.  Petitioner, however, never objected to any continuances

8    during the proceedings.  Lodged Doc. 4, at 4 (acknowledging Superior Court "reviewed the

9    court's files over the matter and finds in the files no specific objection by [Petitioner] to the

10   continuances on the specific grounds of unreasonable delay or denial of speedy resolution"

11   (internal quotation marks omitted)).

12        Thus, the thirty-three month delay should be attributable to Petitioner because he did not

13   object to any continuances.  *See United States v. Shetty*, 130 F.3d 1324, 1330-31 (9th Cir. 1997)

14   (finding delay attributable to defendant where neither defense counsel nor defendant objected to

15   any continuances granted and instead stipulated to most); *see also United States v. Lam*, 251 F.3d

16   852, 858 (9th Cir.), *amended*, 262 F.3d 1033 (9th Cir. 2001) (finding defendant bound by his

17   attorney's actions in having sought several continuances, but noting defendant can preserve his

18   rights to speedy trial when he expressly asserts his rights and his actions contradict his

19   counsel's).  Petitioner had ample opportunity to object to any of the continuances but the record

20   does not show that he ever objected.  *Cf. McNeely*, 336 F.3d at 829 n.8 (finding defense

21   counsel's waiver of time not necessarily attributable to defendant where defendant repeatedly

22   disagreed with counsel and asserted his right to speedy trial).  Thus, Petitioner, rather than the

23   State, is substantially "more to blame" for the delay.  *Doggett*, 505 U.S. at 651.  *Barker*'s second

24   factor does not support Petitioner's claim.

25             iv.  Third Factor:  Petitioner's Assertion of the Right

26        A petitioner's assertion of his speedy trial right is "entitled to strong evidentiary weight in

1   determining whether the [petitioner] [was] deprived of the right." *Barker*, 407 U.S. at 531-32.

2   The "failure to assert the right will make it difficult for a [petitioner] to prove that he was denied

3   a speedy trial." *Id.* at 532.  "[I]f delay is attributable to the [petitioner], then his waiver may be

4   given effect under standard waiver doctrine." *Id.* at 529.

5           Even repeated assertions of a petitioner's speedy trial right must be viewed in light of the

6   petitioner's other conduct.  *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986).  A petitioner

7   may not establish that he appropriately asserted his speedy trial rights when at the same time he

8   was asserting the right in the trial court by filing motions and appeals which contributed to the

9   delay in his trial.  *See id.* at 314-15 (finding defendants' repeated assertions of their speedy trial

10  rights was contradicted by their filings of frivolous petitions in the appellate courts and of

11  repeated and unsuccessful motions in the trial court, which contributed to delay in their trial);

12  *Lam*, 251 F.3d at 859 (determining where counsel's successive requests for continuances are

13  attributable to defendant, weight of defendant's assertions of his speedy trial right is considerably

14  diminished).

15          Although Petitioner claims he "objected to the delays at every opportunity," Pet'r's Pet. 6,

16  the record shows that:  (1) Petitioner sought to delay his trial by filing several habeas corpus

17  petitions through the state courts, in which he repeatedly challenged the legality of the SVPA

18  proceedings pending against him, and (2) Petitioner never objected to continuances in the

19  proceedings.  *See supra* Part IV.B.1.c.iii; *see also* Lodged Doc. 4, at 4 (noting that Superior

20  Court acknowledged Petitioner's allegation that he "has been objecting to continuances," but

21  "has reviewed the files over the matter and finds in the files no specific objection by [Petitioner]

22  to the continuances on the specific grounds of unreasonable delay or denial of speedy resolution"

23  (internal quotation marks omitted)).  Barker's third factor, therefore, does not support

24  Petitioner's claim.

25                          v.  Fourth Factor:  Prejudice

26          Petitioner bears the burden of demonstrating actual prejudice under the fourth *Barker*

25

1  factor because he is responsible for the delay in his trial.  *Lam*, 251 F.3d at 859; *United States v.*

2  *Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995); *United States v. Aguirre*, 994 F.2d 1454, 1458 (9th

3  Cir. 1993).  "*Doggett* holds that we should presume prejudice only if the [petitioner] is not

4  responsible for the delay."  *Aguirre*, 994 F.2d at 1457.  But if the petitioner is responsible for the

5  delay in his trial, then he carries the heavy burden of demonstrating actual prejudice to succeed

6  on a speedy trial claim.  *Id.* at 1458.

7         Actual prejudice can be shown in three ways:  (1) oppressive pretrial incarceration; (2)

8  anxiety and concern of the accused; and (3) the possibility that the accused's defense will be

9  impaired.  *Doggett*, 505 U.S. at 654; *Barker*, 407 U.S. at 532.  "Of these, the most serious is the

10  last, because the inability of [the accused] adequately to prepare his case skews the fairness of the

11  entire system."  *Barker*, 407 U.S. at 532.

12         Here, Petitioner does not credibly point to any specific damage to his defense stemming

13  from the delay in his trial.  In fact, the delay could have assisted his defense had he availed

14  himself of the sexual offender treatment programs available at Atascadero State Hospital, where

15  he was detained.  *Cf. Loud Hawk*, 474 U.S. at 315 (noting delay is two-edge sword; the passage

16  of time may make it more difficult or impossible for government to carry its burden of proof).

17  Thus, *Barker*'s final factor of prejudice does not support Petitioner's claim.

18         In sum, Petitioner's speedy trial right was not violated, assuming that right attached to

19  civil commitment proceedings.  *Cf. Barker*, 407 U.S. at 533-36 (finding no Sixth Amendment

20  speedy trial violation where criminal defendant did not request speedy trial and had not been

21  seriously prejudiced by more than five-year delay between his arrest and trial, even though most

22  of delay was attributable to prosecutor's inability to try co-indictee and have him testify at

23  defendant's trial).  Accordingly, Petitioner's speedy trial claim does not entitle him to habeas

24  relief.  Thus, Petitioner's claims of due process, equal protection, and speedy trial violations due

25  to trial delay fail.

26  ///

2.  Ground One:  Counsel's Failure to Make Objections

In ground one, Petitioner complains that his counsel failed to present to the Superior Court numerous objections, which may be construed as an ineffective assistance of counsel claim.  Pet'r's Mem. 15.  These objections include "the long delays in bringing the commitment petition to trial; the violations of statutory law (Civil Discovery Act of 1985); suppression of tainted evaluation reports and testimony; denial of due process; the vagueness (lack of guidance) of the SVPA; consolidation of petitions; and lack of jurisdiction."  *Id.*  For the following reasons, Petitioner's ineffective assistance of counsel claim lacks merit.

a.  Legal Standard for Ineffective Assistance of Counsel Claim

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court sets forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  An allegation of ineffective assistance of counsel requires that a petitioner establish two elements:  (1) counsel's performance was deficient; and (2) the petitioner was prejudiced by the deficiency.  *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994); *see Strickland*, 466 U.S. at 687.

First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  To this end, a petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *Id.* at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  *Id.*  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland,* 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

1  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

2  been different." *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine

3  confidence in the outcome." *Id.*; *see also Williams,* 529 U.S. at 391-92; *Laboa v. Calderon,* 224

4  F.3d 972, 981 (9th Cir. 2000).

5      A court need not determine whether counsel's performance was deficient before

6  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

7  *Strickland*, 466 U.S. at 697.  Since the petitioner must affirmatively prove prejudice, any

8  deficiency that does not result in prejudice must necessarily fail.  However, certain instances are

9  legally presumed to result in prejudice, e.g., where there was an actual or constructive denial of

10  the counsel's assistance, or where the State interfered with counsel's assistance.  *Id.* at 692; *see*

11  *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984).

12                    b.  Analysis of Ineffective Assistance of Counsel Claim

13      Here, Petitioner fails to demonstrate prejudice resulting from his counsel's representation.

14  *See Strickland*, 466 U.S. at 697; *Weaver v. Palmateer*, 455 F.3d 958, 966 (9th Cir. 2006) ("We

15  are well-advised to bypass scrutinizing a criminal-defense attorney's representation if the

16  defendant cannot show that he was prejudiced by it.").  Petitioner does not show "there is a

17  reasonable probability that," but for counsel's failure to raise Petitioner's objections, "the result

18  of the [SVPA] proceeding would have been different." *Strickland*, 466 U.S. at 694.  Petitioner

19  wanted counsel to raise objections that are not meritorious.  *See supra* Part IV.B.1 (trial delay,

20  due process); *see infra* Parts IV.B.4 (Civil Discovery Act violations); IV.B.5 (vagueness), IV.B.6

21  (trial consolidation), IV.B.7 (jurisdiction), and IV.B.8 (reports and testimony).  Thus, Petitioner's

22  ineffective assistance of counsel claim, as construed from his allegations in ground one, should

23  be rejected.

24                    3.  Ground One:  Violation of the Right to Petition for State Habeas Relief

25      In ground one, Petitioner contends his "right to petition for writ of habeas corpus" was

26  violated because "California" does not allow "pro se litigants" to file state habeas petitions "until

28

1   after all trial and appeal proceedings are completed." Pet'r's Pet. 4.

2       "In conducting habeas review, a federal court is limited to deciding whether a conviction

3   violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S.

4   62, 68 (1991). Habeas relief is not available for an alleged error in the interpretation or

5   application of state law. *See id.* at 67-68. A federal district court has "no authority to review a

6   state's application of its own laws." *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990). Instead,

7   federal courts may grant habeas relief only to correct errors of federal constitutional magnitude.

8   *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).

9       Here, Petitioner does not allege that he was deprived of any federally protected right.

10  Instead, Petitioner's claim involves only alleged state law errors, and is not cognizable on federal

11  habeas review. *See generally Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (explaining

12  federal petitioner may not "transform a state-law issue into a federal one merely by asserting a

13  violation of due process"), *cert. denied*, 522 U.S. 881 (1997). Accordingly, Petitioner's claim

14  asserting a violation of his right to petition for state habeas relief is not reviewable.

15              4. Ground Two: Violations of the California Civil Discovery Act and SVPA

16      In ground two, Petitioner argues that "[t]he State evaluators and the D.A. ignored the

17  ground rules set up by the Civil Discovery Act [Code of Civil Procedure §§ 2016 through 2036]

18  as well as the SVPA" during his "mental" evaluations. Pet'r's Pet. 5. Specifically, Petitioner

19  asserts his due process rights were violated because: (1) he "has never been provided with notice

20  or other due process of any of the evaluations so he could confer with his attorney," Pet'r's Mem.

21  23; (2) the interviews were not recorded, *id.*; and (3) he "was never provided with a copy" of the

22  evaluation reports.[10] *Id.* Ground two fails for several reasons.

23      Petitioner's claims appear to allege only state law errors and are not cognizable on federal

24

25      [10] In ground two, Petitioner also asserts that "[t]he People and their experts . . . used old
    evaluations, probation, and police reports, none of which contained current information and only
    added 'spillover prejudice[,]'[] tainting the jury impressions of [Petitioner]." Pet'r's Pet. 5. This

26  is addressed in Part IV.B.8.

1   habeas review.  *See supra* Part IV.B.3.  In any event, the record does not show Petitioner was

2   denied any procedural safeguards under the SVPA.  *See supra* Part IV.B.1.a.  First, the SVPA

3   does not require that the evaluator provide advance notice before conducting the evaluation.  *See*

4   *Woodward v. Mayberg*, 242 F. Supp. 2d 695, 704-05 (N.D. Cal. 2003) ("SVPA does not provide

5   for notification prior to screening and evaluation.  Nor is it clearly established that the Due

6   Process Clause requires such notification. . . . [N]o Supreme Court precedent requir[es] that an

7   individual must be given notification prior to being screened and evaluated under the

8   circumstances of this case."); *Carmony*, 99 Cal. App. 4th at 326-28, 120 Cal. Rptr. 2d 896

9   (affirming trial court's overruling of Petitioner's objections that:  "(1) he received no advance

10  notice that he was being evaluated as an SVP; (2) he was coerced into making statements to the

11  psychologists; and (3) he was deprived of the right to advice of counsel before proceeding with

12  the interviews").

13          Second, no authority exists showing that a petitioner has a constitutional right to have his

14  SVPA interviews or evaluations recorded.  *See Pritchett v. Hunter*, No. C-05-0764-PJH, 2008

15  WL 4183932, at *13 (N.D. Cal. Sept. 9, 2008) (concluding no due process violation occurred

16  where civilly committed petitioner claimed he failed to receive notice and tape recordings of

17  psychological interviews); *People v. Sumahit*, 128 Cal. App. 4th 347, 354 n.3, 27 Cal. Rptr. 3d

18  233 (2005) ("SVP prisoners are certainly not a suspect class and defendant has no fundamental

19  right to have his interviews recorded.  The DMH policy serves the rational state purpose of

20  preventing SVP interviewees from becoming distracted by the use of a tape recorder, thereby

21  promoting complete candor and honesty during the interview process.").  In any case, at the April

22  2, 2004 probable cause hearing on the second recommitment petition, the Superior Court ordered

23  that State mental health expert Dr. Douglas Korpi "reinterview[] [Petitioner] for purposes of the

24  jury trial" and "also order[ed] that it be tape-recorded."  Rep.'s Augment on Appeal vol. 1, 46,

25  181.  Nevertheless, Petitioner refused to be interviewed by Dr. Korpi in the fall of 2004.  Lodged

26  Doc. 4, at 9.

1    Third, the record belies Petitioner's claim that he "was never provided with a copy" of the

2    evaluation reports. *Compare* Pet'r's Mem. 23, *with*, *e.g.*, Rep.'s Tr. on Appeal vol. 1, 245

3    (showing Petitioner's counsel referred to "page three" of "latest report . . . dated October 9th of

4    2004" by State mental health expert Dr. Shoba Sreenivasan at 2005 recommitment trial), *and*

5    Rep.'s Augment on Appeal vol. 1, 47 (during cross examination of Dr. Korpi at April 2, 2004

6    probable cause hearing, Petitioner's counsel asserted, "You list some 28 items *in your report* that

7    you relied upon [in evaluating Petitioner]." (emphasis added)).  Additionally, Petitioner admits

8    copies of his evaluation reports "are available to Petitioner at $0.10 per page from the

9    Department of Mental Health," but "Petitioner must pay for his copies of the report."  Pet'r's

10   Supplemental Pet. 8.  This fee comports with California state law.  CAL. CIV. CODE § 1798.33

11   ("Each agency may establish fees to be charged, if any, to an individual for making copies of a

12   record.  Such fees shall exclude the cost of any search for and review of the record, and shall not

13   exceed ten cents ($0.10) per page, unless the agency fee for copying is established by statute.").

14   Nothing in the record indicates Petitioner was unable to pay this fee.  Thus, Petitioner is not

15   entitled to habeas relief on ground two.

16          5. Ground Three:  Vagueness

17          In ground three, Petitioner argues that "the vagueness of the SVPA, which does not give

18   guidance as to when the trial must take place, allows the government to deprive a person of their

19   liberty without any timely or meaningful due process."  Pet'r's Pet. 5.  Petitioner asserts that "the

20   legislature[] fail[ed] to delineate a time frame in which trial must take place."  *Id.*

21          This argument is conceptually flawed.  An unconstitutionally vague statute is unclear as

22   to:  (1) who falls within its scope; (2) what conduct is forbidden; and/or (3) what punishment

23   may be imposed.  *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).  Under the

24   SVPA, none of these points are unclear.  Further, as to the time for a commitment trial, state law

25   clearly imposes no deadline for holding the trial.  *See People v. Superior Court* (*Preciado*), 87

26   Cal. App. 4th 1122, 1127, 105 Cal. Rptr. 2d 159 (2001).  The SVPA, therefore, is not

1  unconstitutionally vague due to the lack of a time frame for holding a trial, and Petitioner's claim

2  fails.

3                  6.  Ground Five:  Trial Consolidation

4          In ground five, Petitioner challenges the Superior Court's decision to consolidate the first

5  and second recommitment petitions into one trial.  Pet'r's Pet. 7.

6          The California Court of Appeal has explicitly found that trial courts are, in fact,

7  authorized to consolidate recommitment hearings.  *Litmon*, 123 Cal. App. 4th at 1174-75, 21 Cal.

8  Rptr. 3d 21.  In *Litmon*, however, the court recognized that limitations on this authority may exist

9  when the petitioner opposes consolidation and stands prepared to proceed to trial before

10  additional recommitment petitions are filed.  *Id.* at 1176, 21 Cal. Rptr. 3d 21.  Specifically,

11  *Litmon* set forth the following limitation:

12          [W]hen the trial on the earlier petition can be held within the
           two-year commitment period to which it relates, and the SVP has
13          announced ready for trial and has objected to consolidation or a
           continuance, consolidation appears to be at odds with the
14          legislative intent codified in the SVPA.

15          . . . .

16          [I]t is error to order consolidation over objection when a
           consolidated trial can occur only if the earlier petition is further
17          delayed.

18          . . . .

19          In our view, a motion to consolidate successive petitions should
           not be granted unless the SVP consents to consolidation or the
20          *consolidation will not delay the trial of the earlier petition*.
           However, *if consolidation will not delay the trial of the earlier*
21          *petition, and consolidation will not prejudice the SVP's right to a*
           *fair trial, then consolidation is permissible.*

22

23  *Id.* at 1176-77, 21 Cal. Rptr. 3d 21 (emphasis added).

24          Here, however, the limitation to consolidate the recommitment hearings is inapplicable.

25  As the Court of Appeal noted in the instant case:

26          Here, the consolidation motion was granted on January 10, 2005.

> Jury selection on both petitions commenced minutes later.  Thus,
> the consolidation did not delay the trial of the earlier petition.  This
> distinguishes the present case from *Litmon*, in which "it was the
> trial court's granting of the People's consolidation motion, over
> Litmon's objection, that resulted in a delay of his pending trial on
> the earlier petition beyond the two-year commitment petition."
> (*Litmon*, *supra*, 123 Cal.App.4th at p. 1177.)

Lodged Doc. 4, at 6.  Further, the record supports that the delay in bringing the first

recommitment petition to trial was primarily attributable to Petitioner's conduct or to that of his

counsel.  *See supra* Part IV.B.1.c.iii.

Petitioner attempts to show prejudice from the consolidation of the two recommitment

petitions by arguing no trier of fact would likely be able to assess the evidence separately as to

the two discrete two-year periods of time.  According to Petitioner, he was forced "to defend

allegations at trial where two sets of evaluations concerned two different time periods and had an

improper cumulative effect."  Pet'r's Mem. 64.  However, *Litmon* establishes that a person is

"adjudged" an SVP from "the time the verdict is rendered," upon a showing he "'currently'

suffers from a diagnosed mental disorder which prevents him from controlling sexually violent

behavior and which 'makes' him dangerous and 'likely' to reoffend."  123 Cal. App. 4th at 1170,

21 Cal. Rptr. 3d 21 (quoting *Hubbart*, 19 Cal. 4th at 1162, 81 Cal. Rptr. 2d 492, 969 P.2d 584).

It is the present inability to control sexually violent behavior which determines whether the SVP

is dangerous if not confined.  *See id.*  Petitioner's contention that two separate time periods must

be tried when petitions are consolidated thus does not comport with California's interpretations

of its own law.  Accordingly, habeas relief is not warranted on Petitioner's fifth ground for relief.

### 7.  Ground Six:  Jurisdiction

In ground six, Petitioner argues that "there was no valid commitment term when the

second petition to extend was filed."  Pet'r's Pet. 7.  Petitioner was completing an unexpired

two-year SVP commitment term at the time the first of the two recommitment petitions at issue

here was filed.  Although the first petition was filed before expiration of his then-current

commitment period, that term expired before a recommitment order was issued.  The second

recommitment petition was filed in January 2004, before trial on the first petition had occurred,

and after his previously-ordered commitment term had expired.  Petitioner, therefore, concludes

that "the court lacked jurisdiction to accept a new petition for recommitment since this petitioner

was neither under sentence, parole, probation, nor commitment at the time the petition was

filed."  *Id.*  He also argues that the SVPA "must be narrowly construed and strictly applied,"

citing *Peters v. Superior Court*, 79 Cal. App. 4th 845, 847-48, 94 Cal. Rptr. 2d 350 (2000)

(holding statutory requirements for initial SVPA commitments apply equally to recommitments,

and state may not recommit SVP on single psychological evaluation when statute called for at

least two).  Pet'r's Mem. 72.

Petitioner's arguments appear to be solely state law interpretation issues that he attempts

to characterize as jurisdictional or "due process" infirmities.  *See supra* Part IV.B.3.  However,

even if the merits are reached, California courts have rejected Petitioner's jurisdictional

arguments.  *See Orozco v. Superior Court*, 117 Cal. App. 4th 170, 176-79, 11 Cal. Rptr. 3d 573

(2004) (holding no requirement exists to obtain recommitment before extending confinement

beyond two-year commitment period while timely-filed recommitment petition remains under

review, and there is "no jurisdictional requirement that a recommitment order be obtained before

expiration of the prior term" (emphasis omitted)); *Litmon*, 123 Cal. App. 4th at 1171, 21 Cal.

Rptr. 3d 21 (holding "the only act that could divest the court of subject matter jurisdiction and

trigger a dismissal is the People's failure to *file* a petition for recommitment before the prior

commitment expires," where trial on recommitment petitions affecting two SVPs had been

delayed for twenty-three months (emphasis added)); *People v. Superior Court* (*Ramirez*), 70 Cal.

App. 4th 1384, 1390, 83 Cal. Rptr. 2d 402 (1999) (holding failure to complete trial on

subsequent petition before expiration of prior commitment period does not divest trial court of

jurisdiction to proceed on subsequent petition); *see also* CAL. WELF. & INST. CODE § 6602

(requiring on finding of probable cause, "the judge shall order that the person remain in custody

in a secure facility until trial is completed").  Thus, Petitioner's claim that "the court lacked

34

1    jurisdiction to accept a new petition for recommitment" fails.  Pet'r's Pet. 7.

2                    8.  Ground Seven:  Insufficient Evidence

3           In ground seven, Petitioner argues that his "civil commitment must be reversed due to

4    insufficiency of the evidence supporting the jury verdict finding him to be a sexually violent

5    predator *likely* to reoffend."  *Id.* at 8.  He asserts that "static reports and other old information

6    cannot be used to make a current diagnosis."  *Id.*  He also claims "[i]n Petitioner's trial, all the

7    experts testified that the science of 'recidivism predictability' was in a constant state of

8    development, internal division and criticism, and dubious data . . . ."  *Id.* (emphasis omitted).

9                    a.  Legal Standard for Insufficient Evidence Claim

10          When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is

11   only available if it is found that upon the record evidence presented at trial, viewed in the light

12   more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond

13   a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Under *Jackson*, the court

14   must review the entire record when the sufficiency of the evidence is challenged on habeas.

15   *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985), *vacated on other grounds*, 789 F.2d

16   722 (9th Cir. 1986) (en banc); *rev'd*, 483 U.S. 1 (1987).  It is the province of the jury to "resolve

17   conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

18   facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "The question is not whether we are

19   personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the

20   conclusion that these jurors reached."  *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).

21   Under *Jackson*, the federal habeas court determines evidence sufficiency "with explicit reference

22   to the substantive elements of the criminal offense as defined by state law."  443 U.S. at 324

23   n.16.

24                    b.  Analysis of Insufficient Evidence Claim

25          Here, the record reflects that sufficient evidence supports Petitioner's civil

26   recommitment.  At Petitioner's recommitment trial, three mental health experts testified for the

State:  (1) Dr. Douglas Korpi; (2) Dr. Shoba Sreenivasan; and (3) Dr. Gabrielle Paladino.  One

mental health expert, Dr. Theodore Donaldson, testified for Petitioner.

First, psychologist Dr. Douglas Korpi, a mental health expert for the State, testified that

Petitioner's pedophilia was "exceptionally well ingrained."  Rep.'s Tr. vol. 1, 64.  Dr. Korpi

testified, "I just think he happens to be at high risk" for reoffending.  *Id.*  Dr. Korpi's reasons

included, among others:  (1) "this is a man with a strange sexual deviancy[11] who takes victims in

the highest risk pool [strangers and boys], has never been married," *id.* at 92; (2) "he's violated

probation several times, . . . and he offends sexually while on probation," *id.* at 93; (3) "there's

no basic change in the kind of person he is" from "23 years ago,"[12] when Petitioner committed

the last offense, *id.*; (4) although Petitioner has "pain in his back," he "certainly is capable of

getting up and touching a boy," *id.* at 96; (5) Petitioner "had problems with impotence since his

30's," but "[i]t didn't stop him, however, from offending at 44 with the boys.  So in this case

impotence isn't an issue," *id.* at 97; (6) Petitioner "declines involvement" in any treatment

programs, *id.* at 98; and (7) "[h]e has no one waiting for him upon his release, and his history

suggests that his intimacy issues are rather significantly disrupted inasmuch as it's natural for a

man to have a relationship with an eleven year old."  *Id.*

Dr. Korpi confirmed that pedophilia is a "life-long condition" that cannot be cured.

According to Dr. Korpi, "you can [only] learn to control it" through "successful methods," *id.* at

87, which Petitioner failed to acquire.  *Id.* at 98.  Petitioner also refused to be interviewed by Dr.

Korpi in December 2003 and in the fall of 2004.  Lodged Doc. 4, at 9.

Second, psychologist Dr. Shoba Sreenivasan, a mental health expert for the State,

[11] Dr. Korpi compares Petitioner to a "priest doing the sermon.  During the day good guy, lots of things going for him interpersonally, but then he has a private life.  And so, it's the sexual deviancy that is driving the high risk in this case."  Rep.'s Tr. vol. 1, 93.

[12] Dr. Korpi elaborated, "He wasn't a cocaine, whiskey, swilling thug when he was sexually offending, and he's not a cocaine using whiskey swilling thug now.  He's not a gang banger.  He's at Atascadero State Hospital, gets along with people, usually described as pleasant, always been that way."  Rep.'s Tr. vol. 1, 93-94.

1  confirmed that Petitioner "still poses a serious and well-founded risk in this case."  Rep.'s Tr.,

2  vol. 1, 222.  Dr. Sreenivasan found that under the Static-99 test, "that's been use[d] the most

3  widely," "[t]here are ten risk factors here and [Petitioner's] score was a six, that falls in a high

4  risk range."  *Id.* at 214.  Under the "Stable-2000" test, "[a] lot of factors put him in the increased

5  risk range," *id.* at 215, including, among others:  (1) intimacy issues, "where he looked at young

6  boys as his friends and had this whole sexualized thing, *id.*;" (2) "sexual preoccupation," which

7  "stopped because he has been in custody," *id.*; (3) an attitude "tolerant of sexual assault," where

8  he viewed boys as "willing participants" and "sex as a private matter between two people no

9  matter how old they are," *id.* at 216; and (4) "cooperation with supervision," where "he was on

10  probation in the 60s for a sex offense," and "he goes and commits these other three sex offenses.

11  . . . On the other hand, he has done relatively well in prison and he has done relatively well in the

12  hospital."  *Id.*

13        Dr. Sreenivasan also testified that Petitioner's pedophilia is a "multiple decade issue" and

14  remains "untreated, so there is nothing really that's changed here."  *Id.* at 212.  From reading the

15  records, Dr. Sreenivasan stated that in treatment programs, Petitioner is "legalistic" and "often

16  says he will take the fifth, he doesn't want to talk about his sex offenses."  *Id.* at 222.  Thus,

17  "there has been no treatment participation."  *Id.*  Consequently, Petitioner cannot "apply" control

18  techniques learned from treatment "to a high risk situation," so "how can he deal with it besides

19  starting to be friendly to some kid so that he can get some emotional support."  *Id.* at 225.

20  Petitioner also "refused to be interviewed by Dr. Sreenivasan, both initially and the two times she

21  sought to update her evaluations."  Lodged Doc. 4, at 15.

22        Third, psychiatrist Dr. Gabrielle Paladino, a mental health expert for the State, confirmed

23  that she found Petitioner "met the criteria of the sexually violent predator act."  Rep.'s Tr. vol. 2,

24  600.  Dr. Paladino found that Petitioner "would have a high potential of reoffending."  Rep.'s Tr.

25  vol. 3, 606.  Dr. Paladino's reasons included, among others: (1) "he's targeted boys," and "those

26  who target boys[] are usually in a category pretty much of their own of the hands-on sex

1  offenders," *id.*; (2) "he's had victims, who he didn't know" and "doesn't have any other criminal

2  history," so "he's very focused on this," *id.*; and (3) Petitioner is unable to "sustain[]

3  relationships outside of these children and he has been rather active in soliciting these children."

4  *Id.* at 607.

5     Dr. Paladino testified that "when [Petitioner] gets out into society, within a short order,

6  there are sex crimes that he has committed." Rep.'s Tr. vol. 3, 604.  According to Dr. Paladino,

7  pedophilia "is a chronic condition that just doesn't magically stop," and "there hasn't been a

8  change in him . . . that's been so important to stop those urges from being enacted out on more

9  children." *Id.* at 604-05.  Petitioner also refused to be interviewed by Dr. Paladino in March

10  2002, June 2003, and November 2004.  Rep.'s Tr. vol. 2, 599.

11     Finally, Dr. Theodore Donaldson, a clinical psychologist, testified on Petitioner's behalf.

12  Lodged Doc. 4, at 17.  Dr. Donaldson concluded that Petitioner "was not a pedophile." Rep.'s

13  Tr. vol. 2, 452.  Dr. Donaldson acknowledged, "Certainly he has a preference" for "teenaged

14  boys." *Id.* at 450, 452.  According to Dr. Donaldson, however, Petitioner's "age preference . . .

15  would not qualify for a diagnosis of pedophilia because [Petitioner's victims were] not under

16  thirteen, thirteen or under, although some of his victims were that young." *Id.* at 450.  Dr.

17  Donaldson also added, "[H]is last offense was a very long time ago, around 24 years," and "he

18  has not been attracted to young inmates in the prison system." *Id.* at 452.  Dr. Donaldson thereby

19  concluded that either Petitioner "never had it in the first place or he is in total remission." *Id.* at

20  453.  Additionally, Dr. Donaldson mentioned that "now [Petitioner] can't get an erection at all."

21  *Id.*  However, Dr. Donaldson admitted, "We know true pedophiles are not always driven by

22  sexual interest.  It's through the attachment t[o] the children, and whether they can get an

23  erection may not be essential." *Id.*

24     The record, therefore, reveals that sufficient evidence supports Petitioner's civil

25  recommitment.  "The fact that defendant has not misbehaved in a strictly controlled hospital

26  environment does not prove he no longer suffers from a mental disorder that poses a danger to

38

1    others. . . . Because he currently lacks access to children, his lack of outward signs of sexual

2    deviance is not dispositive of whether he is likely to reoffend if released into society at large."

3    *Sumahit*, 128 Cal. App. 4th at 353, 27 Cal. Rptr. 3d 233.  Further, although Petitioner complains

4    about the lack of more recent information, "[b]ecause [Petitioner] refused to be interviewed by

5    the state's experts, who could have formed an opinion as to his present dangerousness,

6    [Petitioner] has forfeited the claim that the state did not prove that he was currently dangerous."

7    *Id.* at 353-54.  Additionally, "[t]he jury was made well aware of the difference in opinion as to

8    the usefulness of the actuarial tools or risk assessment instruments" about which the experts

9    testified.  Lodged Doc. 4, at 20; *see United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir.

10   2004) ("[T]he credibility of witnesses is a question for the jury, unreviewable on appeal.").

11   Thus, Petitioner's seventh claim for relief due to insufficient evidence should be denied.

12         C.  First Request:  Order To Show Cause

13         In his prayer for relief, Petitioner requests "an order to show cause."  Pet'r's

14   Supplemental Pet. 13.  As stated earlier, Respondents filed an answer to the petition on June 6,

15   2008, to which Petitioner filed a traverse on June 26, 2008.  Accordingly, Petitioner's request for

16   an order to show cause is denied as moot.

17         D.  Second Request:  Judicial Notice

18         In a separate "motion requesting the court to take judicial notice," ECF No. 14, Petitioner

19   requests judicial notice of *People v. Litmon*, 162 Cal. App. 4th 383, 76 Cal. Rptr. 3d 122 (2008).

20   While judicial notice of this ruling may be taken, *United States v. Wilson*, 631 F.2d 118, 119-20

21   (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as

22   the records of an inferior court in other cases."), they are, at most, persuasive authority.

23   Petitioner's pleadings, therefore, are treated as supplemental briefing.  Because judicial notice is

24   unnecessary, the request for judicial notice is denied.  *See Ventura Mobilehome Cmtys. Owners*

25   *Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 n.5 (9th Cir. 2004) (denying request for

26   judicial notice of rulings by other courts, where rulings, "in any event, . . . do not alter our

1  determination of the case").

2      E.  Other Miscellaneous Requests

3          In his prayer for relief, Petitioner requests:  (1) definition of "the rights of the parties;" (2)

4  exclusion of "all evaluation reports and testimony based thereon by State evaluators;" (3)

5  "[d]ismiss[al]" and the "set[ting] aside" of both recommitment petitions; (4) rejection and/or

6  dismissal of "probable cause findings;" (5) vacating "the commitment(s) obtained using reports

7  and testimony of evaluators;" (6) sanctions against "the District Attorney and their agents;" (7) a

8  declaration that "the SVPA [is] unconstitutionally vague;" and (8) an order freeing Petitioner.

9  Pet'r's Supplemental Pet. 13; Pet'r's Mem. 88-89.  Since habeas relief should not be granted, it is

10  recommended that Petitioner's remaining requests be denied.  *See supra* Part IV.B.

11                              V.  CONCLUSION

12          For the foregoing reasons, IT IS HEREBY ORDERED that:

13      1.  Petitioner's request for an order to show cause is DENIED as moot; and

14      2.  Petitioner's request for judicial notice is DENIED.

15      IT IS HEREBY RECOMMENDED that:

16      1.  Petitioner's application for writ of habeas corpus be DENIED; and

17      2.  Petitioner's remaining requests be DENIED.

18          These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within seven days after service of the objections.  Failure to file

24  objections within the specified time may waive the right to appeal the District Court's order.

25  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57

26  (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of

1   appealability should be issued in the event he elects to file an appeal from the judgment in this

2   case.  *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or

3   deny certificate of appealability when it enters final order adverse to applicant).

4   DATED:        October 7, 2010.

5

6

7                                          TIMOTHY J BOMMER
                                           UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26